# EXHIBIT A

COMMONWEALTH OF VIRGINIA
IN THE CIRCUIT COURT
FOR THE CITY OF ALEXANDRIA, VIRGINIA

ROSSI WADE & DAUGHTER (JANE DOE),

        Plaintiff,

vs.

TRUIST BANK ET, al & THE GRNERAL
INSURANCE COMPANY

        Defendant

Case No.: ~~Number~~  CLZ2001759

COMPLAINT

FILED
CLERK OF COURTS
CITY OF ALEXANDRIA
2022 JUL -5  PM 3:46
J. GREG PARKS, CLERK
BY
DEPUTY CLERK

**JURISDICTION**

Jurisdiction in this venue is proper under diverse jurisdiction where the amount exceeds $75,000 and where corporations conduct business in and maintain operation in states Judicial Act of 1789. I Rossi Wade and Daughter (Jane Doe) are citizens of the U.S. we reside in McLean, Va. 22201The state of Virginia is where the incident occurred and is in the state and jurisdiction where defendants reside. SunTrust Bank, now Truist Bank, principle, location 214 N. Tyron St. CHAROLETTE, N.C. 28202. The company's flagship subsidiary, Truist Bank operate networks throughout the southeast locations: Virginia, Maryland, Alabama, Arkansas, Georgia, North Carolina, South Carolina, West Virginia, Washington, D.C. The Defendants' principal place of business, "Sun Trust "Truist Bank was located at 515 King St. Alexandria, Va 22314. The Defendants are as follows: Truist Bank, SunTrust Banks, Inc., Branch banking and Trust Co., and Branch Banking Trust Co., William H Rogers (President and CEO), Kelly S King (Chairman and CEO), Jennifer S Banner (Board of Directors), K. David Boyer Jr. (Board of Directors), Agnes Bundy, Anna R Cablik, Dallas S Clement, Paul D Donohue, Paul R Garcia , Patrick C Graney III, Linne M Haynesworth, Easter A Maynard, Donna S Maria, Charles a Patton, Nido R Quebin, David M Ratcliffe, Frank O Scruggs, Christine Sears, Thomas E Skains, Bruce L Tanner, Thomas N Thompson, Steven C Voorhees, Maurice Steward (Old Town branch manager), Jodie Meadows, Stephon Cumberbatch (Richmond highway branch manager), Cynthia Williams.

COMPLAINT - 1

1

VENUE

2          NOW COMES PLAINTIFFS' Rossi Wade and Daughter (Jane Doe) to file this complaint and

3   Demand a Jury Trial. Venue is proper; Commonwealth of Virginia where I file this Negligence Tort, Breach of

4   Contract, Breach of Covenant, Misrepresentation, Liability and Privacy Rule Act, Deceptive Trade Practices

5   lawsuit. I am asking for Economic, Non-Economic, Compensatory Damages for: Injuries/Re-Injury sustained,

6   Mental Cruelty, Mental Anguish, Loss of Enjoyment of Life, in Treble Damages for present and future pain and

7   suffering. I am asking the Courts for Punitive Damages for violations of Laws of Commonwealth,

8              Banking, and Duty Owed to Customers for their reckless behavior hopefully to stop these

9   institutions from their blatant disregard for their customers and their lives. Hopefully no other customers or potential

10  customers will have to suffer losses such as myself and daughter due to no negligence of our own.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 2

## FACTS AND PROCEDURAL HISTORY

June 28, 2019, I and daughter (Jane Doe) went into SunTrust Bank, now Truist Bank, by merger, to open bank accounts. I expressed to the individual defendant, Maurice Steward, the Old Towne Alexandria branch manager, that I wanted to open some accounts but needed a definite date the funds would be available before I would open the accounts due to having a scheduled surgery the following Monday. The bank manager M. Steward assured me the funds would be available on the following Monday if I opened the account that day. Monday July 1, 2019, I was scheduled for surgery and needed funds to be available before surgery.

Due to the doctor's hectic schedule, I could not miss my appointment because the next available date for surgery would be in March of 2020. The doctor expressed to me this was an emergency surgery if I missed it, I would incur bone loss as well as other issues. Defendant M. Steward stated the funds would be available and subsequently, myself and daughter opened the accounts. Monday, July 1, 2019, I went into the, now, Truist Bank, was located at 515 King St., Alexandria, VA to withdraw funds. I walked in the and saw bank manager M. Steward. He asked if he could help me, I said I needed to get cash before I check in for surgery, I presented a check for $1300.00 to be cashed.

COMPLAINT - 3

**FACTS AND PROCEDURAL HISTORY**

1

2          July 1, 2019, defendants Truist Bank and Steward told myself and daughter (Jane Doe) to come

3   back on July 2, 2019, because the funds were not available when Steward assured me the funds would be available.

4   On Tuesday July 2, 2019, myself, and daughter (Jane Doe), went to the Truist Bank that was located at 515 King

5   Street Alexandria, VA on July 2, 2019, to withdraw funds and close the accounts. We walked into the bank and went

6   to the teller with a check for twenty dollars to cash and the teller told me the funds were not available. I then went to

7   see the branch manager, M. Steward, he told me to come back on Wednesday the funds would be available.

8          On July 3, 2019, I went back to the Old Town location. Steward, the branch manager, told me the

9   account was closed because of fraud and something was wrong with the check. I asked him what was wrong with

10  the check, and he said he didn't know but it was flagged for fraud. I advised him that nothing was wrong with the

11  check. I left that branch of SunTrust "Truist" Bank and went to the Richmond Highway branch and spoke with

12  Stephon Cumberbatch, that branch manager and asked him to look at my accounts. I told him I wanted to close my

13  accounts and I wanted my funds. He asked me for my account numbers, and I handed him a check. Cumberbatch

14  informed me the **funds haven't cleared** and **I couldn't close the accounts.** I asked what he meant I couldn't close

15  the accounts and Cumberbatch said he couldn't access that screen and he took out a handbook. Earles v Barclay 09

16  carry out full proper disclosure from meeting before contract was signed. Deery v Peek negligent misrepresentation.

17          Campbell v Alion, Dickman v Capparo harm was result of defendant's conduct.

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 4

## FACTS AND PROCEDURAL HISTORY

I asked him what kind of branch manager can't access a computer screen and he said I can do more than access a computer screen. He informed me that he was a computer programmer, that he knew how to work on a computer. I told Cumberbatch that SunTrust "Truist" Bank and its employees are corrupt. Cumberbatch laughed at me as I exited his office and said that's not my problem and SunTrust "Truist" Bank isn't holding his money. I asked him what he said he then replied, that's why you're, referring to myself and daughter, **not getting your money**. At that point I informed him I would see him in court. I left the Richmond Highway location and went to the Kingstown location at 5820 Kingstown Center, Alexandria, VA 22315 I went in and asked to speak with a bank manager, the branch manager came out.

I followed Patrick, the branch manager, to his office and I briefly informed him of my situation, and I told him I wanted to speak with someone in the home office. He advised me he would send an email to corporate office and have someone to contact me. I informed the branch manager, Patrick, that I wanted to close my accounts, but the branch manager told me he was unable to give me my funds. He informed me the account was pending closure and he didn't know why I couldn't retrieve my funds. He apologized and sent an email to the home office in Atlanta, Ga and informed me that someone would be in contact with me within 24 hours.

COMPLAINT - 5

## FACTS AND PROCEDURAL HISTORY

Later in the day I received a call from Lisa Evans, and she told me my account was closing and she didn't know why. I asked to speak with the President of the bank, William Rogers and/or John Gregg, and she told me I could not speak with the President, but she would have someone give me a call. I informed her that if no one called me I would see them in court.

On Monday, July 8, 2019, I went back to SunTrust "Truist" Bank – Old Town, and wrote a check to get cash and Steward, the branch manager, told me the funds were not available because the check hadn't cleared. I left the branch and called **Mary McCready of the General Insurance Company**, the issuer of my checks, and told her to stop payment and issue me new checks. **She informed me her assistant would help me with the stop payment because she'd be out of the office on vacation**. I spoke with her assistant, and she informed me that the stop payment couldn't go through because the check had been cashed.

I called SunTrust "Truist" Bank on July 8, 2019 and spoke with Shelia (a SunTrust customer service representative) I told her I wanted to speak with the President of the bank, William Rogers and/or John Gregg. I informed Shelia that I've been given the run around with regards to due to lack of duty owed to customer and their negligent misrepresentation of the facts with my account I had been unable to speak with anyone in authority that could rectify this matter. I was ill and couldn't speak for long period of time without being in severe pain I reiterated the urgency of myself speaking William Rogers to get some clarity regarding my accounts. Shelia **told me my account was under review for closure, it wasn't closed but I was unable to access funds from my account**. I asked her what exactly what that meant; she said it's a hold on your account and you can't get any money.

COMPLAINT - 6

**FACTS AND PROCEDURAL HISTORY**

1

2          On July 9, 2019, I called SunTrust "Truist" Bank and spoke with Lisa Rice, a customer service

3  representative, and she told me to give her my personal identifiable information, my social security number, date of

4  birth, and some additional information.

5          I gave the information Lisa Rice the information she requested once I gave her the information,

6  she held and hung up the phone. She wouldn't discuss the details of my account. On July 10, 2019, I called SunTrust

7  "Truist" Bank and spoke with **Jenna and she told me my funds were available**. So, I went to the bank to make a

8  withdrawal and the teller refused to release my funds. I called back and ask to speak with Jenna and told her I was

9  unable to access my funds and she was not sure why I couldn't, but she would notate my account regarding the issue

10 I also called the automated system, and it states my funds were available.

11          On July 12, 2019, Cynthia Williams called me from SunTrust "Truist" Bank's home office in

12 Atlanta, Ga around 11 a.m. EST. **Williams informed me that my account was resolved,** and I can go to the Old

13 Town location and pick up my check from a teller. **I asked her if she was sure because that day, I was gravely ill.**

14 **I could hardly walk and was in constant pain with no relief due to missing my surgery.** I asked her what time I

15 should go because I didn't think I could make it. Cynthia Williams told me to go about 12:00 noon or 1:00 pm. I

16 went to that location, to the teller, and gave her a **check and she informed me that my accounts were frozen**, and I

17 couldn't get any money. I told her I spoke with Cynthia Williams, and she told me to come here and pick up my

18 check. The teller told me she didn't know anything about it at that point I went to Steward's office, the branch

19 manager.

20

21

22

23

24

25

26

27

28

COMPLAINT - 7

## FACTS AND PROCEDURAL HISTORY

He informed me he didn't have a check for me. I told him Cynthia Williams told me to come to this location and pick up my checks. He told me to have a seat and he would call her – except he didn't call her but called someone else. So, I called Cynthia Williams and asked her why she was playing games with me, and that Steward said he doesn't have my checks. **I left the branch and called Mary McCready** (of The General Insurance Company), I told her what happened. I was too ill to deal with them, I advised her how I missed surgery because of the games they were playing, and my health was getting worse.

I asked if there was any way she could stop payment on that check and issue another one, she advised me she couldn't stop payment on the checks because the checks were **cashed on July 2, 2019.** Mary McCready changed her statement. She said she would be on vacation for a week, and she would get her assistant to stop payment on the draft and if we needed anything else to let her assistant know. July 13, 2019, I became gravely **ill and was rushed to the hospital (due to missing my surgery).** Upon entering the hospital and speaking with the doctor, she told me my situation worsened and I needed immediate surgery and that was not in her area and that the **facilities were not equipped to perform the surgery I needed,** and no physician was on duty that could perform surgery. So, she gave me anti-biotics because gangrene had set up in my face. She also diagnosed me with having broken bone to my facial structure and that bone was protruding through my gums.

COMPLAINT - 8

### FACTS AND PROCEDURAL HISTORY

I called Mary McCready when she returned to work, and she told me that she had spoken with her assistant, and now stated she couldn't stop payment on the check. When she could have been honest with me at the time of the statement or was, she being honest now?

Now McCready states because the check had been cashed. I asked her when the check was cashed, she stated the check was cashed July 2, 2019, by, then, SunTrust Bank. She apologized and said there was nothing she could have done once a check had been cashed. I told her, since it's out of her hands, **I informed her not to deal** with SunTrust Bank, now Truist Bank, if they tried to contact her because I was suing the bank an all involved with this transaction.

I called Truist Bank, and informed them that the checks had been cashed, I asked how can you cash a check that they deemed fraudulent? Truist continued to give me the run around **stating the check was no good** and was being investigated. I reached back out to McCready and told her what Truist stated and that I would be suing. She assured me the checks had been cashed. A week later I received a call from Jodi Meadows, of then, SunTrust Bank, and she stated she would be contacting me in a couple of days.

COMPLAINT - 9

**FACTS AND PROCEDURAL HISTORY**

July 20, 2019, Jodi Meadows, of Truist Bank, called me and said she spoke with Mary McCready, and she would be mailing the checks back to Mary McCready, of The General Insurance Company. I asked her how could she mail a check to McCready that had been cashed?

How is that possible when you said the check was fraud, that it was no good. I also stated how can you mail her a check when your policy states otherwise. It's impossible to mail The General Insurance Company a check on my behalf. Jodi Meadows stated that she and Mary McCready had worked out the details and I needed to contact McCready. I told her **I didn't give her permission nor Meadows** of, then, SunTrust bank, permission to discuss any transactions on my behalf or my daughter's behalf, and that I would see her in court. I called Mary McCready to confirm that she spoke with Jodi Meadows without my permission, and as stated, McCready confirmed that she spoke with Meadows of, then, SunTrust Bank, and they made an agreement that SunTrust Bank would mail McCready the checks.

At that point, I asked McCready why she didn't call me before a decision was made or that my bank contacted her when I explicitly told her not to speak with them on my behalf. I told her she explicitly played a role in hindering my recovery by not attempting to reach out to Jodi prior when she stated you would.

I missed my surgery, and my health was deteriorating, and I was unable to have surgery for another year as I told her in previous conversa I was in pain and unable to work due to broken jaw inability to speak clear enough to be understood that took all my compensation, my job consisted of speaking with people on a daily basis one in which I had loss my ability to do.

COMPLAINT - 10

## FACTS AND PROCEDURAL HISTORY

My daughter lost her educational funding because of the delays and the inability to get our funds released in time to meet the qualifications that the scholarship program required to receive the funding needed in time to continue her education. The conversation with Jodi continued to be redundant and unproductive with Truist Bank's continual stalling tactic.

I lost my employment my daughter lost her scholarship funding all while relocating to a new place with no family or friends to help in our time of need. Instead of Truist bank following the law and Banking Rule No.30 which stated release funding upon request.

Truist bank continued to break the law and make up rules as they deemed fit and continued to prolong the transaction with disinformation that contributed to my situation becoming dire. McCready informed me that SunTrust/Truist Bank requested that an arrangement be made to re-issue a check. I asked McCready why she didn't stop payment on the check when I asked her to. McCready stated again, she couldn't I asked her why arrangements couldn't be made when I needed them instead of making arrangement now when I was unable to have surgery.

McCready told me she would give me a call once she received the checks from, then, SunTrust Bank now Truist bank due to merger. I informed McCready to do whatever she wanted to do with the checks because I will be suing both institutions. I was unable to have surgery my daughter loss her funding I loss my home I needed my money now. I told Mary McCready that she didn't have power of attorney from myself or daughter to negotiate transactions on our behalf. In order for her to discuss any transaction she needed to give out my personal information as well as my daughter personal information because Jodi Meadows of Sun Trust bank now Truist bank didn't have my case information.

COMPLAINT - 11

1

## FACTS AND PROCEDURAL HISTORY

2          When I call Sun Trust then now Truist bank, I had to give out my personal identifier information

3   before I could discuss any transaction, as well as my daughter, so how was it possible for you discuss any

4   information on my behalf without giving out my personal information?

5          The most important aspect in this matter how you can discuss a transaction on my behalf weeks

6   later but couldn't discuss the transaction when I asked you stop payment on the check. You assured me you would

7   stop payment on the check you stated you were going on vacation and would have your assistant to stop payment

8   when you left for vacation.

9          You stated I had any issues to call and have your assistant to reach out and you would get the

10  matter resolved. You knew my situation was dire I almost died you never spoke on my behalf to get the issue

11  resolved, you never called Truist bank I was a customer of The General you never show any duty of care under

12  contractual agreement your allegiance was with Truist bank not your insured. Due to your negligence my situation

13  has gotten worse. I couldn't have surgery due to nonpayment a situation you contributed to then covid came about

14  which prolonged my surgery even further.

15         Due to the inability to have surgery not only did I incur bone loss, but I also lost teeth in the

16  process. I have incurred an infection going throughout my body to affect my nails and skin have become

17  discoloration. It also caused enamors weight gain.

18         I am unable to sleep on my left side due to injury sustained and the pain in my face as well as my

19  body. I have suffered from long term unemployment because I am unable to speak in a manner where I can be

20  understood without being in pain when I talk as well as being unable to speak properly due to tooth loss. My

21  daughter had to put education on hold because lack of funding and having to help me out because of the injuries

22  sustained your lack of care and misrepresentation has caused injury and loss to myself and daughter.

23

24

25

26

27

28

COMPLAINT - 12

**COUNT: I**

COMMON LAW NEGLIGENCE, BREACH OF CONTRACT, BREACH OF COVENANT MISREPRESENTATION

Plaintiffs repeats and re-allege as if set forth June 28, July 1, & July 2, opening accounts at Truist Bank, by merger, and repeatedly stated funds would be available but refused to release said funds, making Plaintiff miss a scheduled surgery in which caused the condition to worsen. Dickman v Capparo harm was a result of defendant's conduct. Deery v. Peek negligent misrepresentation. Banking Act No. 30 bank is suppose to pay on demand. Standard Chartered Bank v Pakistan National Ship tort deceit company making a false statement such as the defendant's.

Even after causing Plaintiff to miss surgery, the defendants repeatedly refuse to release the funds which caused other catastrophic incidents to set in motion some in which caused economic loss as well as educational losses in the Plaintiffs' lives. *Carl v. Republic Security Bank 282 F. Supp. 2d 1358* Providing that the "bank and its agent lacked the requisite mental state under the civil theft statue that is acting under the intent to permanently deprive (plaintiff) of property that rightfully belong to the Plaintiff, when Bank lawfully exercised its right to set off funds in bank account. Bank may be held liable when its negligence causes its customers to sustain economic loss.

*Fed. Ins. Co. v. N.C.N.B Nat'l Bank of NC. 958 F.2d 1544 (11th Cir. 92)* Duties owed by a bank are contractual in nature. June 28, 2019, Myself and daughter (Jane Doe) plaintiffs went into SunTrust Bank, now Truist Bank by merger, to open bank accounts. Coggs v Bernard any man who undertakes to do an act is liable to an action did cause injuries and near death experience. Niru Bartley manufacturing Co. Bank Seph Iran v Milestone Trading Limited causation of loss deceit a wrong out of false statement made by one person entity knowing or recklessly with the intentions that it should be acted upon by another.

COMPLAINT - 13

**CONTINUE**

1

2          Plaintiffs' repeat and re-allege set forth in June 28, July 1, & July 2nd I expressed to the individual

3    defendant, Maurice Steward, the Old Towne (Alexandria) branch manager, I wanted to open some accounts but

4    needed a definite date the funds would be available.

5          Before I would open the accounts due to having a scheduled surgery the following Monday. The

6    **bank manager M. Steward assured me the funds would be available on the following Monday** if I opened the

7    account today.

8          Monday July 1, 2019, I was scheduled for surgery and needed funds to be available before

9    surgery. Due to the doctor's hectic schedule, I could not miss my appointment because the next available date for

10   surgery would be in March of 2020.

11         The doctor expressed to me this was an emergency surgery if I missed it, I would incur bone loss

12   as well as other issues. Defendant M. Steward stated the funds would be available and subsequently, myself and

13   daughter opened the accounts. Monday, July 1, 2019, I went into the Sun Trust Bank now Truist Bank, located at

14   515 King St., Alexandria, VA to withdraw funds.

15         I walked in the and saw bank manager M. Steward. He asked if he could help me, I said I needed

16   to get cash before I check in for surgery, **I presented a check for $1300.00 to be cashed. July 1, 2019**, defendants

17   Truist Bank and Steward told myself and daughter (Jane Doe) to come back on July 2, 2019, because the **funds** were

18   not available when Steward assured me the funds would be available.

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 14

**CONTINUE**

Plaintiffs' repeat and re-allege as set forth June 28, July 1, & July 2 On Tuesday July 2, 2019, myself, and daughter (Jane Doe), went to the Truist Bank located at 515 King Street Alexandria, VA on July 2, 2019, to withdraw funds and close the account. We walked into the bank and went to the teller with a check for twenty dollars to cash and the teller told me the **funds were not available.**

I then went to see the branch manager, M. Steward he told me to come back on Wednesday the funds would be available. *Fed. Dep. Ins. V. Cameron 986F. Supp. 21337 The F.D.I.C-R* contends that after this revision negligence claims against Bank directors/officers follows the general common-law rule. They occur only when every element of the claim including actual damages is present.

I left the Richmond Highway location and went to the Kingstown location at 5820 Kingstown Center, Alexandria, VA 22315 I went in and asked to speak with a bank manager, the branch manager came out. I followed Patrick, the branch manager, to his office and I briefly informed him of my situation, and I told him I wanted to speak with someone in the home office. He advised me he would send an email to corporate office and have someone to contact me. I informed the branch manager, Patrick, that I wanted to close my accounts, but the branch manager told me he was unable to give me my funds.

Plaintiffs' repeat and re-allege as set forth in June 28, July 1, & July 2, He informed me the account was pending closure and he didn't know why I couldn't retrieve my funds. He apologized and sent an email to the home office in Atlanta, Ga and informed me that someone would be in contact with me within 24 hours. Later in the day I received a call from Lisa Evans, and she told me my account was closing and she didn't know why. I asked to speak with the President of the bank, William Rogers and/or John Gregg, and she told me I could not speak with the President, but she would have someone give me a call.

I informed her that if no one called me I would see them in court On Monday, July 8, 2019, I went back to SunTrust "Truist" Bank – Old Town and wrote a check to get cash (EXHIBIT B) and Steward, the branch manager, told me the **funds were not available because the check hadn't cleared.** (Exhibit B) *Wultz v. Islamic Republic of Iran 755 F. Supp. 2d (D.D.C2010)* Proximate cause: According to *Professor Naschultz* a duty attaches to Bank under a theory of negligence in cases where there is a direct relationship between the Bank functions and property interest. relationship exist between bank and customer.

COMPLAINT - 15

1

2                                    **CONTINUE**

3              *Lelchook v. Islamic Rep. of Iran 393 F. Supp 3d 261NY. 2019.* Further, under Israeli law a duty

4       attaches to bank under a theory of negligence in cases where there is a direct relationship between the bank functions

5       and property interest *at 60.* Usually, such relationship exists directly between a bank and its customers, but it can

6       involve third party who rely on proper conduct of bank operations. *Id* Accordingly, *BS PLC.*, is liable for negligence

7       under *CWO &35. M. Corp. v. Clarke 755 F. Supp. 1402 (N.D. Tex.* 91). The Irwin court noted, however, that

8       precedent has recognized a cause of actions was negligent operation of a bank.

9       I left the branch and called Mary McCready of the General Insurance Company, the issuer of my checks and told her

10      to stop payment and issue me new checks. She informed me her assistant would help me with the stop payment

11      because she'd be out of the office on vacation. *J.P. Morgan Chase Bank., NA. v. Pinzler 2010 N.Y.- Slip U.CC & 4-*

12      103 doesn't define ordinary care, but the drafters of the code indicate that the term is used with its normal tort

13      meaning. **Breach of Duty** of ordinary care is recognized as a proper basis for a **negligence claim** against a

14      collecting bank.

15      *Broadway N. Bank v. Barton-Russell Corp., 154 Misc.2d.* Four elements plaintiff must prove to prevail: 1. Duty

16      owed to him/her 2. Breach of Duty and Harm Suffered. *Jacques v. First Nat'l Bank 301 md 527, 531, 515 A.2d.*

17      Duty of Ordinary Care *Taylor v. Equitable Trust Co., 269 md ng A.2* alleged Negligence in disbursing customers

18      funds.

19      *Md code (1975, 2002 Repl. Vol.) 3-103* of commercial law article, cmt 5 *See also 4-103* of commercial law article

20      bank is to use good faith and exercise ordinary care. The commercial code defines ordinary care observance of

21      reasonable commercial standards.

22      A bank customers may bring a negligence suit against a bank for violation of this duty of care. *Taylor 269,* md at

23      *155-56, 304 A.2d at 841-42.* I spoke with her assistant, and she informed me that the stop payment couldn't go

24      through because the check had been cashed.

25

26

27

28

COMPLAINT - 16

**CONTINUE**

I called SunTrust "Truist" Bank on July 8, 2019, spoke with Shelia (a SunTrust customer service representative) I told her I wanted to speak with the President of the bank, William Rogers and/or John Gregg.

I informed her that I've been given the run around about my account and needed surgery I was ill and needed to know what was going on with my account. Shelia told me my account was under review for closure, it wasn't closed but I was unable to access funds from my account.

I asked her what that meant she said it's a hold on your account and you can't get any money. On July 9, 2019, I called SunTrust "Truist" Bank and spoke with Lisa Rice, a customer service representative, and she told me to give her my personal identifiable information and she would discuss the details of my account. I gave her the information and she refused to provide me with my account information and hung up the phone. On July 10, 2019, I called SunTrust "Truist" Bank and spoke with Jenna and she told me my funds were available at that point I went to the bank to make a withdrawal and the teller refused to release my funds. I called back and ask to speak with Jeanne and told her I was unable to access my funds and she was not sure why I couldn't access my funds, but she would notate my account regarding the issue. I also called the automated system, and it states my funds were available. *Molinari v. Royal Heights Constr. Co., No 934424 A* **common-law action for negligence,** Plaintiff contends supplies the remedy for any negligent violation of the duty. *Gabriel v. Borowy, 324 mass 231,234 (1949). Threadway v. Railroad Co. 281 S.E. 2d under Fed. E LA* plaintiff need only show that his injury resulted in whole or in part from negligence of any officer.

The usual common-law criteria of negligence which concludes reasonable foreseeability that defendant actions or omissions might result in injury, must be met Bennett, *Supra. Schultz v. Bank of America 413 md.* Ordinary standard of care four elements: duty owed, breach of duty, legal cognizable casual, relationship between the breach of duty and the harm suffered, and damages.

COMPLAINT - 17

1

2

3

4

**CONTINUE**

5      *G.F.D. Enterprisees, Inc., v. Nye 37 Ohio St. 3rd 205 (Ohio 1988)* UCC specifically states that a

6    bank is liable for negligence paying an item, the above subsection at least implies that a common-law action may lie

7    when a bank's conducts falls, below ordinary care. *See 2 Hart Willier Supra at section 12.34. O. jur 3 rd* negotiable

8    *instrument & 470.571* pursuant to the final payment rule embodied in *R.C. 1303.54, pymt of a negotiable* instrument

9    by a payor bank is final of a holder in due course thus rendering such payor bank primarily liable on the instrument

10    1303.54 construed and applied.

11            On July 12, 2019, Cynthia Williams called me from SunTrust "Truist" Bank's home office in

12    Atlanta, Ga around 11 a.m. EST. Williams informed me that my account was resolved, and I can go to the Old Town

13    location and pick up my check from a teller. I asked her if she was sure because that day, I was gravely ill. I could

14    hardly walk and was in constant pain with no relief due to missing my surgery.

15            I asked her what time I should go because I didn't think I could make it. Cynthia Williams told

16    me to go about 12:00 noon or 1:00 pm. I went to that location, to the teller, and gave her a check and she informed

17    me that my accounts were frozen, and I couldn't get any money. I told her I spoke with Cynthia Williams, and she

18    told me to come here and pick up my check.

19            The teller told me she didn't know anything about it at that point I went to Steward's office, the

20    branch manager. He informed me he didn't have a check for me. I told him Cynthia Williams told me to come to

21    this location and pick up my checks. He told me to have a seat and he would call her – except he didn't call her but

22    called someone else. So, I called Cynthia Williams and asked her why she was playing games with me, and that

23    Steward said he doesn't have my check.

24

25

26

27

28

COMPLAINT - 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT: II**

COMMON LAW MISREPRESENTATION, BREACH OF CONTRACT, BREACH OF COVENANT & NEGLIGENCE

A complaint alleging breach of contract and resulting damages an action cognizable at common law. Misrepresentation an essential element of negligent misrepresentation is that the "plaintiff suffers pecuniary loss by justifiably relying on the representation *Fed. Land bank assn' of Tyler v. Sloane 825 S.W. 2d 439, 442, (Tex 91)* common law a material misrepresentation which caused injury. *DeSantis v. Wackenhut Corp., 793 S.W. 2d 670, 688 (Tex. 90)*.

An indispensable element of civil conspiracy is damage as proximate result of the illicit agreement. *Ortloff Corp., v. Gulsby Engineering.,* In on misrepresentation common-law fraud requires 1. Misrepresentation of material facts 2. An intent to deceive or scienter 3. Justifiable reliance on the misrepresentation which induced the deceived party to act. 4. The deceived party injured from the reliance.

*Kyko Global, Inc., v. Prithvi info. Sols., Ltd* the element of common-law fraud claim intentional misrepresentation claim in Pa are: 1. Misrepresentation 2. Material to a transaction made falsely 3. Intending to mislead another to rely on it. 4. So, justifiable reliance resulted in proximately caused the injury. *Safie v. Jacuzzi Whirpool Bath, Inc.,* common-law misrepresentation requires showing of reliance, causation, and injury.

COMPLAINT - 19

**CONTINUE**

To show injury caused by Defendants misrepresentation common-law principles requires that a plaintiff establish the element of *reliance (Mirkin v. Wadderman 93 cal.4 th 1082, 1092 (mirkin)*. Reliance exists when the representation has played a substantial part, and so is a substantial factor in influencing {the plaintiff}.

I left the branch and called Mary McCready (of The General Insurance Company), I told her what happened I was too ill to deal with them, I advised her how I missed surgery because of the games they were playing, my health was getting worse.

I asked if there was, anyway, she could stop payment on that check and issue another one, she advised me she couldn't stop payment on the checks because the checks were cashed on July 2, 2019. Mary McCready changed her statement. She said she would be on vacation for a week, and she would get her assistant to stop payment on the draft and if we needed anything else to let her assistant know.

**July 13, 2019**, I became gravely ill and was **rushed to the hospital** (due to missing my surgery). Upon entering the hospital and speaking with the doctor, she told me my situation worsened and I needed immediate surgery and that was not in her area and that the facilities were not equipped to perform the surgery I needed, and no **physician was on duty that could perform surgery**. So, she gave me anti-biotics because gangrene had set up in my face. She also diagnosed me with having broken bone to my facial structure and that bone was protruding through my gums.

COMPLAINT - 20

1                                   **CONTINUE**

2        *A catercorp, Inc. v. Catering Concepts, Inc. 246 Va. 22(Va. 1993)* Noting common-law recognizes

3 a cause of action {for conspiracy} against those who conspire to induce the breach of contract, even when one of the

4 *alleged conspirators is a party to the contract. (citing Worrie v. Boze, 198 Va. 553, 540-41, 95 S.E..2d, 198-99*

5 *(1956)* deals with conspiracy, both common-law conspiracy and statutory conspiracy.

6        The common-law recognizes a cause of action against those who conspire to induce the breach of

7 contract, even when one of the alleged... *Doe v. Issacs 265 Va. 531 (Va 2003)* we considered the sufficiency of the

8 evidence to support a finding of willful and wanton conduct and an award of punitive damages in case where the

9 defendants apparently intoxicated, drove into the rear of the plaintiffs' car, came to the plaintiff's car and ascertained

10 those injuries had resulted from the collision and fled the scene.

11        *Booth v. Robertson 236Va. 269.* Noting the Supreme Court of Virginia's general reluctance to

12 allow punitive damages in run-of-the-mill personal injury cases". The jury to consider compensatory damages but

13 struck Plaintiff's evidence relating to punitive damages. The jury returned a verdict in favor of the Plaintiff on

14 compensatory damages. *Condominium Serv. v First Owners' Ass'n 281 Va* Noting the punitive damages award in

15 *Poulston of 2.5* times the compensatory award and a punitive damage award in *Philip Morris of 6.6* times the

16 compensatory award. *Philip Morris, Inc, v Emerson, 235 Va. 380* **affirming punitive damages**.

17        *Appalachian Power Co. v Walker 214 Va. 524* As we have said, the nature of walker's bill of

18 complaint was the alleged breach of a common-law right under an alleged contract.

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 21

**CONTINUE**

*Dunn Const. v Cloney, 278 Va. 260* As a general rule, damages for breach of contracts are limited to the pecuniary loss sustained. "*Kamlar Corp v. Haley, 224 Va. 699, 705*. However, a single act or occurrence can in certain circumstances, support causes of action both for a breach of contract and for a breach of duty arising in a tort, thus permitting a Plaintiff to recover both for loss suffered because of the breach and traditional tort damages including, where appropriate, punitive damages.

*Metcoff v. NCT Grp., Inc., 52 Conn Supp. 363*. The Plaintiff seek common-law punitive damages *under 13* alleging intentional misrepresentation punitive damages are recoverable "when the evidence shows reckless, indifference to the right of others or an intentional and wanton violation of those rights.

I called Mary McCready when she returned to work, and she told me that she had spoken with her assistant, and now stated she couldn't stop payment on the check. When she could have been honest with me at the time of the statement. Was McCready, being honest now?

Now McCready states because the check had been cashed. I asked her when the check was, cashed she stated the check was cashed July 2, 2019, by, then, SunTrust Bank. *R.H. Damon v. Softkey Software Products 811 Supp. 986* Plaintiff claim entitlement to punitive damages based on common-law fraud count.

Sweetman v Nathan & Others Misrepresentation: Tort deceit involves a false representation made by defendants, who knows it to be untrue, or who has no belief in its truth, or who is reckless as to its truth.

COMPLAINT - 22

COUNT: III

BREACH OF COVENANT, BREACH OF CONTRACT, NEGLIGENCE & MISREPRESENTATION

*McGuire v. Shubert 722 A.2d 1087* Recognizing duty between banker and customer that "banker will not divulge to third person, without the consent of the customer… any information relating to the customer acquired through the keeping of his/her account'. Based on common-law principles of contract and agency, several jurisdictions have held that a bank has an implied contractual duty, as a matter of law, to keep financial information concerning a depositor confidential. See e.g., *Barnett Bank of West Florida v. Hooper, 498 So.2d. Boydston v. Chrysler Credit Corp., 511 N.E..2d 318. Doe v Chao 540 U.S. 614 Doe sued social security on behalf of giving out his personal identifier information without his permission. Gramm-Leach-Bliley Act Prohibits Banking institutions from giving out personal identifier without customer consent.*

The principal of qualified privilege has its origins in the commonlaw and has long been recognized in Indiana. *Henry v. Moberly (1892), 7 Ind. App. 490, 33* within the rule of qualified privilege our courts have recognized a "common interest" privilege.

A communication is protected as privileged if made in good faith on any subject in which the communicator has an interest or in reference to which he has a public or private duty, and if the communication is made to a person having a corresponding interest or duty. *Puckett v. McKinney (1978), 175 Ind.* The protection arises from the need for full and unrestricted communication regarding matters on which the parties have a common interest or duty.

*Shallenberger v. Scoggins-Thomlinson Inc. (1982).* I called Mary McCready when she returned to work, and she told me that she had spoken with her assistant, and now stated she couldn't stop payment on the check. When she could have been honest with me at the time of the statement or was, she being honest now?

Now McCready states because the check had been cashed. I asked her when the check was cashed, she stated the check was cashed July 2, 2019, by, then, SunTrust Bank. She apologized and said there was nothing she could have done once a check had been cashed.

COMPLAINT - 23

1

2

3                                           **CONTINUE**

4    I told her, since it's out of her hands, I informed her not to deal with SunTrust Bank, now Truist Bank, if they tried

5    to contact her because I was suing the bank an all involved with this transaction. I called Truist Bank, and informed

6    them that the checks had been cashed, I asked how can you cash a check that they deemed fraudulent?

7    Truist continued to give me the run around stating the check was no good and was being investigated. I reached back

8    out to McCready and told her what Truist stated and that I would be suing. She assured me the checks had been

9    cashed. A week later I received a call from Jodi Meadows, of then, SunTrust Bank, and she stated she would be

10   contacting me in a couple of days.

11   July 20, 2019, Jodi Meadows, of Truist Bank, called me and said she spoke with Mary McCready, and she would be

12   mailing the checks back to Mary McCready, of The General Insurance Company. I asked her how could she mail a

13   check to McCready that had been cashed? How is that possible when you said the check was fraud, that it was no

14   good. I also stated how can you mail her a check when your policy states otherwise.

15               It's impossible to mail The General Insurance Company a check on my behalf the contract that I

16   had entered with Truist bank never stated issuance of a check to third party nor did the banking law under Truist

17   guidelines it stated I could go into a bank and pick up my check or Truist now then Sun Trust would mail me the

18   check to the address listed on file. Jodi Meadows stated that she and Mary McCready had worked out the details and

19   I needed to contact McCready to get the details of the transaction. I wanted to know what details when I was told the

20   check was fraudulent the General Insurance and Truist bank entered into a contractual agreement against plaintiffs

21   which was the General client to complete a fraudulent transaction which was done with malice, intent, with no

22   intention of following the laws of banking, with no intentions of following the laws of the Commonwealth, with no

23   intentions of following State Laws, or Federal laws. Ellinger's Modern Banking law states pay customer on demand

24   at the location where the account was opened.

25

26

27

28

COMPLAINT - 24

CONTINUE

The General Insurance and Truist bank's main objective were to cause harm as they did and continued to cause harm until they deemed fit to settle the debt. I told McCready of the General insurance I didn't give her permission, nor did I give Jodi Meadows of, then, SunTrust bank, permission to discuss any transactions on my behalf or my daughter's behalf, and that I would see them in court. Barnett v Westminister, the bank was suppose to protect their customer and honor checks that are written. Winterbottom v Wright 1842, recognition of negligence was in respect of breach of contract. With The General and Truist Bank. Norwich City v. Harvey show how Truist Bank breach a duty to me as a customer as well as the General Insurance breach the duty of care to myself as being a contractual customer to the General Insurance Company.

I called Mary McCready to confirm that she spoke with Jodi Meadows without my permission, and as stated, McCready confirmed that she spoke with Meadows of, then, SunTrust Bank, and they made contractual agreement that SunTrust Bank would mail McCready the checks. At that point, I asked McCready why she didn't call me before a contractual agreement was entered into. I explicitly told McCready of the General insurance not to speak with Truist bank on my behalf with Jodi Meadows or anyone from that institution.

I told McCready she explicitly played a role in hindering my recovery by not attempting to reach out to Jodi Meadows of Truist bank to try and resolve the issue at hand to help deter some losses yet again the misrepresentation on the part of the General caused me catastrophic losses.

McCready's misrepresentation caused me additional losses along with daughter's losses as well as pain and suffering. I missed my surgery, my health was deteriorating, I was unable to have surgery for another year, as I told McCready in previous conversations during the consultation with the doctor opened a slot and told me it was mandatory, I make the appointment, due to previous scheduled patients. Molien v Kaiser Foundation Hospital (1980) The Plaintiff was a direct victim of defendant's negligence the actions of the defendant's cause injury as a result I was a direct victim of their negligence.

The delaying tactics on the part of the General Insurance and Truist Bank was the contributing factor to my losses and my daughter's losses due to their negligence. Our lives were turned upside down and we're yet to recover thanks to their misrepresentation and violating the breach of contract and trust while in binding contractual agreements. McCready informed me that SunTrust Bank requested that arrangement. I asked McCready why she didn't stop payment on the check when I asked her to

COMPLAINT - 25

**CONTINUE**

McCready stated again, she couldn't. McCready told me she would give me a call once she received the checks from, then, SunTrust Bank. I informed McCready to do whatever with the checks because I will be suing both institutions.

I told Mary McCready that she didn't have power of attorney over myself or daughter to negotiate transactions on our behalf. For her to discuss any transaction she needed to give out my personal information as well as my daughter's personal information because Jodi Meadows of, now Truist bank, didn't have my case information. When I call into the bank, I was asked my personal information like my social security number, date of birth and other information I had to provide before I could discuss any transaction, as well as my daughter. Some days depending on the customer service representative, I was unable to access my accounts to have a discussion, so how was it possible for McCready of The General Insurance Company to access my accounts without giving out my personal identifier information when both institutions required that information to access clients/customers' accounts. One of the listed requirements of Truist bank's contract as well as the General Insurance contracts is to name a beneficiary or power of attorney to complete the initial contract requirements. I never listed Mary McCready nor Jodi Meadows on the contractual agreement as a beneficiary or gave either persons or institutions the rights to discuss any transactions on my behalf or my daughter's behalf. I ask how it is possible to negotiate on our behalf without being given permission with a written instrument. We were parties to a contractual agreement which is a written instrument so, how can it be? I went into a verbal agreement when I asked McCready not to do business on my behalf or my daughter's behalf with Truist bank and she refused to acknowledge my plead for help as a client, now she refused to follow the law. The most important aspect in this matter you can't discuss a transaction on my behalf months later. With as many customers as each institution has, how is it possible to remember such specific case information? One would have to research unless, as I stated, the action was intentional, malicious, willful, and wanton, not wanting to assist in retrieval of funds and wanting this incident to occur.

COMPLAINT - 26

**CONTINUE**

Why wouldn't my insurer speak up on my behalf when, considering the allegation of a fraudulent check, I had nothing to do with the issuance of an instrument. Both institutions were intentional and malicious. Why didn't the General step in and take actions when they promised to stop payment on the check when I asked? Because of this negligence, I almost died. McCready was aware of my medical condition.

I reiterated to her the severity of my condition, and it would only worsen without surgery; it did. (Exhibit: J) pictures before and after shows how my jaw was broken and the broken bone had protruded out of my gums. Now my situation has worsened.

I was unable to have surgery then and now due to the existence of covid, another determent has happened which prolonged my healing even further. Not only did I incur bone loss, but I also lost teeth in the process. I have incurred an infection going through my body to affect my nails and skin. The infection caused me to have enamors weight gain. I am unable to sleep on my left side due to the injury and pain in my face. Four years later I am still unable to sleep on my left side and the pain still exists. I am still in need of surgery with replacement of teeth. I have suffered because of the inability to speak and maintain gainful employment in an area I excelled in due to no fault of my own, because my speech was less than acceptable while speaking with clients due to injuries sustained. *hames-Yeakel v. Citizens Financial Bank 667F. Supp.2d. 994*. Finding that under Indiana law, a bank has a duty not to disclose information concerning one of its customers unless it is to someone who has a legitimate public interest" and so "must certainly employ sufficient security measures to protect their customers' online accounts. *251 F.2d Honolulu Oil Corporation v. Kennedy 424*. But for a breach of a covenant, there is a remedy at common-law.

*Foley v. Interactive Data Corp. 47 Cal. 3d*. The distinction between tort and contract is well grounded in common-law, and divergent objectives underlie the remedies created in the two areas. Whereas contract actions are created to enforce the intentions of the parties to agreement, tort law primarily designed to vindicate "social policy" (*Prosse, Law of Tort 4th ed.1971) P.613).* The contract arena and is aimed at making effective the agreement's promises. *Molinari v. Royal Heights Constr., Co. no. 934424* A common-law action for negligence, Plaintiff contends supplies the remedy for any negligence violation of the duty. *Gabriel v. Borowy, 324 mass 231, 234 (194).*

COMPLAINT - 27

1

DAMAGES:

2

3          *Gordon v. B. Braun Med. Inc. 1:19-cv-121,* Thus Plaintiff has adequately pled facts to support an

4    award of punitive damages. *Oeitjenbrun v. CSA Investors Inc 3.F. Supp .2d 1024, Count V* is another commonlaw

5    claim of fraudulent misrepresentation against defendants it seeks actual and punitive damages as relief. *Cadek v.*

6    *Great Lakes Dragway,* In Wisconsin law recognizes fraud misrepresentation a ground for punitive damages.

7          *Venuto v. Atlantis Motor Group, LLC.,* common-law fraud claims when taken together they offer

8    highest potential recovery to Plaintiff pursuant to *NJCFA. R.H. Damon v. Softkey Software Products 811 Supp.*

9    *986*Plaintiff claim entitlement to Punitive damages based on common-law fraud count. *Metcoff v. NCT Group., Inc*

10   *52 Conn Supp.363*

11          The Plaintiff seek common-law punitive damages 13 alleging intentional misrepresentation when

12   evidence shows reckless, indifference to the right of others or intentional and wanton violations of those rights.

13   *Holiday v. Scansea 350* and *United Leasing Corp., v. Thrift Ins., Corp. 247 Va. 299* Allows punitive damages.

14          *Doe v. Chao 540 U.S. 614* Doe sued social security on behalf of giving out his personal identifier

15   information without his permission. *Glass Stegall Act of 1933 prohibits* banking institutions from giving out

16   customers personal identifier information without permission. *Ellinger modern banking laws,* stats pay customer on

17   demand at the location where the account was opened. Truist handbook also states mail the check to the customer or

18   customer may pickup the check at branch location where the account was opened.

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 28

1

2                                    PRAYER FOR RELIEF

3                                        DAMAGES:

4        WHEREFORE, Plaintiff, individual and on behalf of her daughter, prays for relief as follows:

5        12. The Plaintiff re-alleges paragraph 1-23 as fully set forth herein

6        13. As a result of the defendants' conduct, the Plaintiff have suffered the following damages:

7        • Emotional and Mental anguish

8        • Physical loss

9        • Physical pain and suffering

10        • Loss of Enjoyment of Life

11        • Economic and Noneconomic losses, wages and benefits

12        • Loss of Consortium

13        • Gained Medical Expenses

14        • Loss of home and Auto

15        • All other losses arising because of this incident

16        . Punitive damages in accordance with proof and in the amount of $10 million per count

17        (For past and present pain and suffering) treble damages

18        An award to Plaintiff of $200 Billion Dollars from Truist Bank

19        An award to Plaintiff of $ 200 Billion Dollars from The General Insurance Company

20        For such other and further relief as may be deemed just, or proper.

21

22

23

24

25

26

27

28

COMPLAINT - 29

PUNITIVE DAMAGES:

WHEREFORE, Plaintiff, individually and on behalf of her daughter, prays for relief as follows:

12. The Plaintiff re-alleges 1-23 as fully set forth herein.

13. The Plaintiff would show that the acts of the defendants were willful, intentional, wanton, Intensive, Careless, Reckless, and gross negligent: that their conduct give rise to punitive damages and Plaintiff specifically be award of punitive damages. WHEREFORE, NEGLIGENCE, STRICK LIABILITY& VICARIOUS LIABILITY CONSIDERED, the Plaintiff demands judgment of and from Defendants, jointly, and severally, for Actual and Compensatory damages treble in the amount of: $200 Billion Dollars from the General Insurance Company an award of: $200 Billion Dollars from Truist Bank., et, al with treble damages attached for each and every violation in the amount of: $10 Million dollars each for past and present pain and suffering.

To punish and hopefully stop the Defendants continual unlawful act/acts of betraying of the public trust. Evidence and exhibits show when it comes to financial transactions this is not the first incident where the defendants have from taken advantage of their customers and have caused losses.

Truist bank violated the Anti-trust laws as well as betrayed the public trust alone with the Banking Act No.30 which states release funds upon demand. Due to the defendants Truist Bank and the General myself and daughter has suffered and sustained substantial losses as well as time we can't regain these losses had been traumatic to our lives in ways are unimaginable.

COMPLAINT - 30

1

2

3                                        PRAYER (Cont.)

4              Loss of finances, loss of consortium, loss of home and automobile, loss of enjoyment of life, loss

5     of education funding, hindering my daughter ability to graduate on time and meeting quota that the program offered

6     her when she was awarded an early admittance into medical school.

7              Evidence has shown that the behavior of this institution is not new they take advantage of their

8     customer in ways in which some never recover, many times they have been sued but their behavior continues. I am

9     asking that you help me rid this institution of bringing harm to another family and show them no one is above the

10    law regardless of their status.

11             This will be the only way a family dealing with these institutions Truist Bank and the General

12    Insurance will have the ability to have justice when they are being violated because either institution refuses to

13    follow the rules and regulations, they have put in place nor do they follow the banking laws or the Commonwealth

14    laws that have been put in place to help safeguard it customers from illegal activities that continue to exist.

15             Truist bank and the General Insurance has no regard for their customers nor regard for the law I

16    pray these institutions will be stopped from using their monopoly to hinder and/or cause ruin to another family with

17    limited or no resources to sustain themselves. In a lawsuit one is asked to be restored in whole or in part well in my

18    situation I can't be restored in whole I can't get the last four years of my life back I can't make up for loss of

19    enjoyment of life, I am the new weatherman my pain is so severe I know when its going to rain or a change in the

20    weather before the weatherman.

21             Prior to this accident I never knew what pain I was had never been sick a day in my life my only

22    issue was a common cold every three or four years now I hurt almost daily due to an ongoing infection in my body

23    for lack of surgery. Since I am unable to be restored in whole I am asking to be restored in part and grant myself and

24    daughter the finances we are seeking so that I may be able to have the needed surgeries and my daughter will be able

25    to continue her education and become the DO that she has been so desperately trying to become.

26             Help make a dream of a little girl then 5 five years old now young lady come true wanting to

27    become a doctor and maybe she will enjoy the next four years of her life.

28

COMPLAINT - 31

1

2

3

4

5      Dated this 1st day of July 2022.

6      Rossi Wade

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 32

1

2

3 **<u>CERTIFICATE OF SERVICE</u>**

4

5 I hereby certify that on the 1st day of July 2022, I served a copy of the foregoing by First Class

6 Mail to the following:

7 Mary C. Zinsner
TROUTMAN SANDERS LLP
8 401 9th St NW, Ste 1000
Washington, D.C. 20004
9

10

11

12

13 ROSSIWADE
9641 GEORGETOWN
MCLEAN, VA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 33

EXHIBIT


A


CONTRACT WITH TRUIST BANKS (SUNTRUST THEN DUE TO
MERGER)

SUNTRUST BANK
PO BOX 305183
NASHVILLE TN 37230-5183

Page 1 of 2
63/B41/0175/0/72
1000248926171
07/29/2019
0000



# SunTrust

## Account Statement

ROSSI███████WADE OR
HEATHER B WADE
1225 FIRST ST APT 606
ALEXANDRIA VA 22314-6508

Questions? Please call
1-800-786-8787

As of July 1, 2019, changes will be made to Rules and Regulations for Deposit Accounts and Funds Availability Policy. The changes will be reflected in the 06/2019 versions and can be viewed or obtained online at www.suntrust.com/disclosures, by requesting a copy at 800.SUNTRUST, or by visiting a SunTrust branch.

## Account Summary

| Account Type | Account Number | Statement Period |
|---|---|---|
| ADVANTAGE MONEY MARKET SAVINGS ***CLOSED*** | 1000248926171 | 06/28/2019 - 07/29/2019 |

| Description | Amount | Description | Amount |
|---|---|---|---|
| Beginning Balance | $.00 | Average Balance | $7,450.00 |
| Deposits/Credits | $17,000.00 | Average Collected Balance | $7,440.62 |
| Checks | $.00 | Number of Days in Statement Period | 32 |
| Withdrawals/Debits | $17,000.00 | Annual Percentage Yield Earned | .00% |
| Ending Balance | $.00 | Interest Paid Year to Date | $.00 |

## Overdraft Protection

| Account Number | Protected By |
|---|---|
| 1000248926171 | Not enrolled |

For more information about SunTrust's Overdraft Services, visit www.suntrust.com/overdraft.

## Transaction History

| Date | Check # | Transaction Description Details | Deposits/ Credits | Withdrawals/ Debits | Current Balance |
|---|---|---|---|---|---|
| 06/28 | | Beginning Balance | | | .00 |
| 06/28 | | Deposit | 100.00 | | 100.00 |
| 07/02 | | Miscellaneous Credit | 16,900.00 | | 17,000.00 |
| 07/16 | | Legal Order Debit | | 17,000.00 | .00 |
| 07/29 | | Ending Balance | | | .00 |
| | | Credit and Debit Totals | $17,000.00 | $17,000.00 | |

The Ending Daily Balances provided do not reflect pending transactions or holds that may have been outstanding when your transactions posted that day. If your available balance wasn't sufficient when transactions posted, fees may have been assessed.
For more information, including details related to fees and balances, please sign on to Online Banking.

## Balance Activity History

| Date | Balance | Collected Balance | Date | Balance | Collected Balance |
|---|---|---|---|---|---|
| 06/28 | 100.00 | .00 | 07/16 | .00 | .00 |
| 07/01 | 100.00 | 100.00 | 07/29 | .00 | .00 |
| 07/02 | 17,000.00 | 17,000.00 | | | |

Keep your SunTrust Accounts safer. Use unique usernames and passwords for your online bank accounts.
It's best not to recycle the same username and password on multiple websites
where you have an online profile - especially your financial accounts.
Also, try to avoid characters from your email, phone number, birthdate or other personal information.

Good news! Interest rates are being discounted by 0.50% for new Custom Choice private student loan

EXHIBIT

B

CHECK WROTE AT TELLER WINDOW TO CASH SHE REFUSED TO
CASH IT

65-270/550

**100**

DATE 4/1/19

PAY TO
THE ORDER OF *Cash*

$ 1,300.00

*One Thousand Three Hundred Dollars* 00/100 —————— DOLLARS

**SunTrust**   ACH RT 061000104

MEMO *Cash* —

1:0550027737: 1000248926171" 0100

EXHIBIT

C

DEPOSITS

SHOWING COPIES THE CHECK IF THEY WERE FRAUD I HAD
NOTHING TO DO WITH THE WRITING OR ISSUANCE OF THE
DRAFTS.



**Thank you for banking with SunTrust**

Access your account information using
Online and Mobile banking or by calling
us at 800.SunTrust (800.786.8787)

PD 06/28/2019 15:01 # 82
CD 06/28/2019 072 4436221 0008

Deposit
$20,064.00

Chk/Sav/MMA
XXXXXX6189

All deposits are subject to verification
and collection from the issuing bank.

Use alerts and Online or Mobile Banking to
check your Available Balance so that you
have the freedom to spend with confidence.



**Thank you for banking with SunTrust**

Access your account information using
Online and Mobile banking or by calling
us at 800.SunTrust (800.786.8787)

PD 06/28/2019 16:47 " '8
CD 06/28/2019 072 44 · · '08

Deposit
$10,249.55

Chk/Sav/MMA
XXXXXX6189

·its are subject to verification
·ction from the issuing bank.

·rts and Online or Mobile Banking to
·heck your Available Balance so that you
have the freedom to spend with confidence.

SUNTRUST
for banking with SunTrust

r account information using
Mobile banking or by calling
800.SunTrust (800.786.8787)

19 15:01 # 83
19 072 4436221 0008

$100.00

XXXXXX6171

ts are subject to verification
tion from the issuing bank.

and Online or Mobile Banking to
· Available Balance so that you
reedom to spend with confidence.

EXHIBIT:


D


CHECKS WRITTEN FOR CASH REFUSAL TO CASH THEM

Exhibit #4

Deposits

Rossi Wade          9164773853
1225 First St                              65-270/550   7/2/19      98
Alexandria, VA 22314          DATE

PAY TO
THE ORDER OF                                        $ 20.00

Twenty Dollars 00/100                     DOLLARS

**SunTrust**          ACH RT 061000104

MEMO

⑆055002707⑆ ⑈1000248926189⑈ 0098

EXHIBIT:


E.


BANK CONFIRMATION SHOWING CHECK WAS IN FACT GOOD AND HAD BEEN

CLEARED AND CASHED

Exhibit # 20

July 2, 2019

Confirmation for Both Checks:
Were Cashed

RW: 1Z549WV10139916621

HW: 1Z549WV10139916621

SunTrust Bank Cashed The
Checks on July 2, 2019

Important!

EXHIBIT:


F


LETTER FROM THE FEDERAL RESERVE GIVING ME PERMISSION
TO FILE SUIT



**FEDERAL
RESERVE
BANK**
*of* ATLANTA

**DEPARTMENT OF SUPERVISION AND REGULATION**
Consumer Compliance

1000 Peachtree Street, N. E.
Atlanta, Georgia 30309
888-342-5133 ext. 7166
Fax 404-498-7302
ConsumerQuestions@atl.frb.org

September 27, 2019

Rossi Wade
1225 First Street
Alexandria, VA 22315

Dear Ms. Wade,

This letter is in response to your complaint regarding SunTrust Bank (SunTrust), Atlanta, Georgia.
You stated in your complaint that SunTrust opened accounts for you and accepted checks for deposit
into those accounts. When you went to withdraw some of the money you were told that the accounts
were being closed and the funds would not be released to you. You would like the funds returned to
you, the bank fined, and compensation for your trouble. You want the Reserve Bank to look into
these matters.

Although we investigate all complaints involving the banks we regulate, we are unable to resolve
contractual disputes, undocumented factual disputes between a customer and a bank, or
disagreements regarding bank policies and procedures. Those limitations notwithstanding, we
contacted SunTrust as soon as we received your letter and requested information to facilitate our
investigation. SunTrust responded to our request on August 20, 2019, and outlined the steps taken to
address this issue.

A review of the information provided by you and SunTrust revealed that on June 28, 2019, you opened a
checking account ending in 6189 and a money market account ending in 6171. A check in the amount
of $10,249.55 was deposited into the account ending in 6189, and a check in the amount of $20,164.00
was deposited with the funds being split between the checking and money market accounts. A total of
$20,064.00 was deposited into the checking account and $100.00 was deposited into the money market
account.

Upon review, the bank decided to terminate their business relationship with you and close your
accounts. This decision was made under the authority of the deposit agreement in place for both
accounts. The deposit agreement is the contract under whose authority the accounts are managed and it
outlines the responsibilities of all parties to the agreement. If you believe that the deposit agreement was
not applied correctly in this case, you will need to speak with an attorney to determine if you can seek
relief through the courts.

The funds that were deposited were returned to General Insurance on July 19, 2019. You will need to
contact them to see what steps you will need to take to obtain the funds.

The Reserve Bank does not have the authority to compel a state member bank to compensate a customer
for alleged damages. You again will need to speak with an attorney to see if you can seek relief through
the courts.

EXHIBIT:

G

WITNESS STATEMENT SHOWING A PATTERN
OF BEHAVIOR FROM SUN TRUST BANK NOW TRUIST BANK

Original review: Feb. 2, 2020

I open a account with SunTrust bank at the branch on January 15th 2020. I received email saying that welcome to SunTrust banking online. Not even two days after I open the account they blocked my online access and I can't even log in into my account. I called SunTrust bank to find out why I can't logged into my account. The rep told me my account was being closed for no reason. I asked the rep to speak to Supervisor and the supervisor couldn't even tell me why my account was being. They say they have right to closed your account with notify you about your account being closed. I told the supervisor I needed answer to why my account was being closed. He couldn't even help me. SunTrust bank is the worst bank ever. They don't even tell people why they account being closed. Warning. Stay away from SunTrust and Bb&t bank because they need to investigate by Better Business Bureau.

Original review: Jan. 31, 2020

Updated on 02/04/2020: I opened an account online, Suntrust then blocked access to my account and I couldn't sign in. When I called to find out why, three different representatives said they had closed my account and told me I could never open one with them, and I would be getting a letter describing why. Then Suntrust sent me a debit card and said funds were available. Right after Suntrust said the account was closed, I notified my other bank and told them not to allow Suntrust to draft any money from my account. Today I get two letters in the mail, one for the checking account I had hoped to open, one for savings, telling me I owe them $25.00 in overdraft fees on an account that THEY cancelled. I am beyond baffled. The conduct of this bank in its customer relations and accounting practices raises many questions.

Original review: Jan. 29, 2020

I had a checking account with Suntrust for over 20 years without any complaints or concerns but last year around Dec 2019 I received a letter informing me that my account would be closed without an explanation, I am aware that sunTrust recently merged with another bank. The letter stated the account would be closed Feb 5, 2020 but was actually closed a week after I received the letter. I have never experienced such horrible treatment. I was unable to withdraw any of my money or access my online account. As a disabled veteran this has caused me undue stress trying to find other means of paying my bills while my money is inaccessible.

Original review: Dec. 19, 2019

Suntrust Bank and a manager Linette **. Do not trust them with your money. We opened a new checking account and had 300k wired into it. The next day they froze the account without warning or notice. Now 2 checks came back labeled frozen account. Then a few days later they closed the account. Called the manager Linette who opened the account over a dozen times with no return call. Called customer service over 50 times with a different excuse every time. I received a letter in the mail stating I requested to close the account. I never did such a thing and if I did give me my money. Then a customer service rep stated human error by the person who opened the account. That was their own branch manager!!!

Original review: Dec. 17, 2019

This is the worst bank ever! They love to put holds for an entire week whenever you deposit a check. I deposited my Christmas bonus yesterday with a teller and I was told I would have my funds available in 24 hours. Today I checked online and they put a hold until December 24. Seriously??? This is a Christmas bonus!!! I will close my account as soon as possible. This was a tremendous bad decision.

Original review: Dec. 7, 2019

Not even a star???? This is the WORST BANK EVER. Do Not trust your money to this Bank. They will make your life miserable.. Client since September. Getting ready to Close my account on Monday. Can't wait!

Original review: Dec. 2, 2019

This bank will hold your funds and the manager at the local banks do nothing but tell you to go home and make phone calls. Holding my funds for over two months now. Putting me in great financial problems. The bank in Harrisonburg Virginia will do nothing. Lazy manager.

1
2
3
4
5     Dated this 5st day of July 2022.
6     Rosa Wade
7
8
9
10
11    Exhibit
12
13
14    H
15
16
17
18
19
20
21    Pictures: Before & After
22
23
24
25
26
27
28

COMPLAINT - 32



PHOTO AFTER THE INCIDENTS

PHOTO BEFORE INCIDENTS